**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

HELEN JOHNSON, as personal representative
of the Estate of Robert T. Johnson,

        Plaintiff,

vs.                                 Case No. 5:06cv92-RS-MD

JAMES V. CROSBY, JR., individually in his
capacity as secretary of the Florida Department
of Corrections; JACK SAPP, individually in his
capacity as warden of Jackson Correctional
Institution; GALINA KATS-KAGAN, M.D.,
individually in her capacity as chief health officer
of Jackson Correctional Institution; GREGORY
YOUNG POYTHRESS, ARNP, individually in his
capacity as advanced registered nurse practitioner
at Jackson Correctional Institution; CAROLYN
MAJORS, RN, individually in her capacity as senior
registered nurse Jackson Correctional Institution;
PAULA DENISE BRYSON, LPN, individually in her
capacity as licensed practical nurse at Jackson
Correctional Institution,

        Defendants.

_____/

## ORDER ON DEFENDANT CROSBY'S MOTION TO DISMISS

        Before the Court is Defendant Crosby's Motion to Dismiss (Doc. 16) filed on

September 29, 2006.  This order incorporates much of the facts and analysis contained

in this Court's Order on Amended Motion to Dismiss entered on October 12, 2006 (Doc.

17.)

## FACTS

        Robert Johnson, now deceased, was an inmate at Jackson Correctional

Institution ("JCI") in Malone, Florida, during the relevant time period.  Plaintiff Helen

Johnson is Robert Johnson's mother and the personal representative of his estate.

Defendants are employees of the Florida Department of Corrections.  The Complaint

(Doc. 1-1) filed on May 4, 2006, alleges the following:

On February 22, 2004, Robert Johnson and another inmate were involved in a physical altercation.  The inmate struck Johnson, causing a laceration over Johnson's left eye.  The following morning, Johnson was sent to the prison infirmary where he received sutures.

Approximately two months after the altercation, or April 18, 2004, Johnson complained of headaches and dizziness.  He was evaluated by Defendant Carolyn Majors, a registered nurse at JCI.  Majors advised Johnson to remain in his dorm and rest.  Several hours later, M.E. Starkey, also a nurse at JCI, completed an abdominal pain assessment, documenting Johnson's complaints of nausea and vomiting.

The following day, April 19, 2004, Starkey completed another abdominal pain assessment and documented Johnson's complaints of dizziness, weakness, nausea, and further vomiting.  Starkey placed Johnson in the infirmary for further observation.  Starkey also recommended that Johnson be evaluated by a physician.

Six hours later, Defendant Gregory Poythress, an advanced registered nurse practitioner at JCI, evaluated Johnson.  Poythress documented Johnson's complaints of abdominal pain, nausea, and vomiting five times following the initial assessment of Johnson's condition the night before.  Poythress decided to modify Johnson's diet and release him from the infirmary.  Johnson was not evaluated by a physician.

On April 27, 2004, Johnson again complained of headache, dizziness, and nausea.  Defendants again planned to refer Johnson to a physician.  Two hours later, Poythress examined Johnson.  Johnson complained of nausea, vomiting, vertigo, and headaches around his eyes radiating to the neck and side of the head.  Poythress diagnosed Johnson with tension headache and vertigo.  Johnson was given ibuprofen and educated on vertigo.  Johnson was not evaluated by a physician.

On April 29, 2004, prison personnel discovered Johnson awake but unresponsive in his bunk.  Johnson did not respond to painful stimuli.  He was transferred to Jackson Hospital.  A CT scan revealed an intracerebral hematoma.  Johnson was then transported to South East Alabama Medical Center in Dothan, Alabama.  A nurse at South East Alabama Medical Center contacted JCI and spoke with Defendant Galina Kats-Kagan, M.D., chief health officer at JCI.  Dr. Kats-Kagan informed the nurse that

Johnson had been involved in an altercation with another inmate in February 2004, which resulted in a laceration to Johnson's left eyebrow, a left head injury, nausea, and vomiting.  Dr. Kats-Kagan also informed the nurse that Johnson had complained of headaches on April 28, 2004, and was transferred to Marianna Hospital, evaluated, and returned to JCI.  No documentation exists to substantiate that this transfer ever occurred.  The nurse at South East Alabama Medical Center informed Dr. Kats-Kagan that Johnson had a left temporal bleed.

On April 29, 2004, Johnson underwent surgery to evacuate the bleed.  On May 4, 2004, Johnson died at South East Alabama Medical Center as a result of the intracerebral hemorrhage.

The Complaint asserts four counts.  Count One alleges that Defendant James Crosby, the secretary of the Florida Department of Corrections, and Defendant Jack Sapp, the warden at JCI, violated Johnson's constitutional rights under 42 U.S.C. § 1983.  Specifically, Count One alleges that Defendants Crosby and Sapp failed to enact or promulgate policies or procedures to insure against the deliberate indifference to Johnson's medical needs and employed a custom of violating the policies and procedures of JCI.  These actions and omissions allegedly demonstrated a deliberate indifference to Johnson's medical needs that ultimately resulted in his death.  Count One further alleges that Defendants Crosby and Sapp deprived Johnson of the rights, privileges, and immunities secured by the Constitution and the laws of the United States, including (1) the right to substantive and procedural due process protected by the Fourteenth Amendment; (2) the right not to be subjected to cruel, unusual, and excessive punishment as guaranteed to prisoners by the Eighth Amendment; and (3) the right to have serious medical and psychiatric needs addressed in a timely manner as guaranteed to prisoners by the Eighth Amendment.

Count Two asserts a claim for wrongful death against Defendants Crosby and Sapp under Fla. Stat. §§ 768.16-768.21.  Count Three asserts a claim for wrongful death against Defendants Kats-Kagan, Poythress, Majors, and Paula Bryson, a licensed practical nurse at JCI, under Fla. Stat. §§ 768.16-768.21.  Count Four alleges that Defendants Kats-Kagan, Poythress, Majors, and Bryson violated Johnson's civil rights under 42 U.S.C. § 1983.

Defendants (excluding Defendant Crosby) filed an Amended Motion to Dismiss on July 27, 2006 (Doc. 12.)  The Motion urged dismissal of Count One against Defendant Sapp on the basis that (1) Defendant Sapp does not qualify as "persons" under § 1983; (2) the Eleventh Amendment bars suit against Defendant Sapp for damages or retrospective relief; and (3) the § 1983 claim fails to allege any facts that could lead a reasonable fact finder to conclude that the actions of Defendant Sapp were products of official policy or procedure.  The Motion also requested dismissal of Counts Two and Three against all Defendants (excluding Defendant Crosby) on the basis that the Complaint fails to allege the grounds on which Plaintiff's wrongful death claims arise.  The Motion further contended that "[t]o the extent Plaintiff's wrongful death claims are alleged to have arisen from medical negligence, the wrongful death claims should be dismissed as to all Defendants for Plaintiff's failure to comply with Florida's statutory requirements relating to medical negligence claims."  Finally, the Motion urged dismissal of Count Three against Defendant Bryson on the basis that the Complaint fails to allege any wrongdoing on the part of Defendant Bryson.

This Court's Order on Amended Motion to Dismiss (Doc. 17) granted in part and denied in part the Motion.  Specifically, the order concluded that Defendant Sapp is not a "person" in his official capacity under § 1983 and that the Eleventh Amendment bars Plaintiff from maintaining a suit against Defendant Sapp in his official capacity under § 1983.  Accordingly, the order dismissed with prejudice the claim asserted in Count One against Defendant Sapp in his official capacity under § 1983.  The order also determined that the claim asserted in Count One against Defendant Sapp in his individual capacity under § 1983 fails to establish supervisory liability and satisfy the heightened pleading requirements of a § 1983 claim levied against a government official acting in his individual capacity.  Therefore, the order dismissed without prejudice the claim asserted in Count One against Defendant Sapp in his individual capacity under § 1983 and granted Plaintiff leave to amend the Complaint.  Further, the order concluded that the claims asserted in Counts Two and Three against all Defendants (with the exception of Defendant Crosby) under Florida's Wrongful Death Act, Fla. Stat. §§ 768.16-768.21, fail to comply with Florida's statutory conditions precedent to bringing an action for wrongful death predicated on a medical negligence theory of liability.

Specifically, the Complaint fails to include a certificate of counsel indicating that a reasonable investigation was conducted which gave rise to a good faith belief that grounds exist for bringing an action against each named defendant, as required by Fla. Stat. § 766.104(1).  Therefore, the order dismissed without prejudice and granted leave to amend the claims asserted in Counts Two and Three insofar as such claims are based on a medical negligence theory of liability under Florida's Wrongful Death Act. Finally, the order dismissed without prejudice and granted leave to amend the wrongful death claim asserted in Count Three against Defendant Bryson, a licensed practical nurse at JCI, because the Complaint fails to allege any wrongdoing on the part of Defendant Bryson.

On September 29, 2006, Defendants filed a motion to dismiss Counts One and Two against Defendant Crosby (Doc. 16.)  The grounds on which dismissal is urged are the same grounds identified in the Amended Motion to Dismiss and already addressed in this Court's order of October 12, 2006.  Defendants contend that Count One against Defendant Crosby should be dismissed because (1) Defendant Crosby is not a "person" under  § 1983; (2) the Eleventh Amendment bars suit against Defendant Crosby; and (3) the allegations are insufficient to support a claim that Defendant Crosby was deliberately indifferent to Johnson's serious medical needs under the Eighth Amendment.  Defendants also contend that the wrongful death claim asserted in Count Two against Defendant Crosby warrants dismissal because it (1) fails to state a claim upon which relief can be granted and (2) fails to comply with Florida's statutory requirements precedent to maintaining a wrongful death action based on a medical negligence theory of liability insofar as the Complaint fails to include the necessary certificate of counsel.  Plaintiff has filed no response to Defendant Crosby's Motion to Dismiss.  Nevertheless, because the arguments raised by Plaintiff in response to the Amended Motion to Dismiss are equally applicable to the present motion, this Court will again revisit and consider the merits of those arguments as they relate to Defendant Crosby.

## DISCUSSION

### I. Standard of Review

Dismissal under Federal Rule of Civil Procedure 12(b)(6) eliminates a pleading or

portion of a pleading which fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In deciding whether to grant or deny a motion to dismiss, the court must accept as true all allegations of the complaint and construe those allegations in the light most favorable to the plaintiff.  See Lopez v. First Union Nat'l Bank of Florida, 129 F.3d 1186, 1189 (11th Cir. 1997); Harper v. Thomas, 988 F.2d 101, 103 (11th Cir. 1993).  Dismissal for failure to state a claim is inappropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Pautala Elec. Membership Corp. v. Whitworth, 951 F.2d 1238, 1240 (11th Cir. 1992) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80, 84 (1957)).  If the facts alleged in the complaint would allow recovery under any possible theory regardless of whether they would allow recovery under the particular theory pleaded, the motion must be denied.  See Linder v. Portocarrero, 963 F.2d 332, 336 (11th Cir. 1992).  The court is not required, however, to accept as true the plaintiff's conclusions of law.  See Solis-Ramirez v. United States Dep't of Justice, 758 F.2d 1426, 1429 (11th Cir. 1985) (citing Associated Builders, Inc. v. Alabama Power Co., 505 F.2d 97, 100 (5th Cir. 1974)).  On the contrary, the court may make its own determination of the legal issue, . . . ."  Solis-Ramirez, 758 F.2d at 1429.  "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  Oxford Asset Mgmt. Ltd. V. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002) (citing South Florida Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 406 (11th Cir. 1996); Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1993)).  In light of this standard, the Court will determine the sufficiency of the Complaint.

## II.  The Sufficiency of the Complaint

### A. Count One - Defendant Crosby

#### 1. "Person" Under 42 U.S.C. § 1983

Defendants first contend that Count One against Defendant Crosby requires dismissal because Defendant Crosby is not a "person" under 42 U.S.C. § 1983.  Section 1983 states, in relevant part, that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any

citizen of the United States or other person within the
jurisdiction thereof to the deprivation of any rights, privileges,
or immunities secured by the Constitution and laws, shall be
liable to the party injured in an action at law, suit in equity, or
other proper proceeding for redress . . .

42 U.S.C. § 1983.

Both parties agree that the term "person" in § 1983 has been interpreted to
"encompass state and local officials sued in their individual capacities, private
individuals and entities that acted under color of state law, and local government
entities." (Docs. 16:4 & 13:8-9.)  Whether Defendant Crosby is a member of any of
these categories is uncertain because the capacity in which Defendant Crosby is being
sued is ambiguous from the face of the Complaint.  The action is brought against
Defendant Crosby "individually in his capacity as secretary of the Florida Department
of Corrections." (Doc. 1.)  This wording is confusing because it is not apparent whether
Plaintiff is suing Defendant Crosby in his "individual" capacity as James Crosby, in his
"official capacity" as secretary of the Florida Department of Corrections, or in both
capacities.[1]  When the complaint does not clearly specify whether an official is being
sued in an individual capacity, in an official capacity, or both, "'the course of
proceedings' in such cases typically will indicate the nature of the liability sought to be
imposed." Kentucky v. Graham, 473 U.S. 159, 167, 105 S. Ct. at 3106, 87 L. Ed. 2d at
122.

Plaintiff thus clarifies.  She states that

[t]he Plaintiff believes her Complaint clearly states that the
Defendants are all being sued in their individual capacities
while acting under color of state law.  The Plaintiff has also
sued the Governmental entity through the Defendants in their
official capacities as agent and representatives, through their
"policy or custom" or lack thereof, which played a major role in
the violation of federal law.  Should this Honorable Court
require, the Plaintiff would respectfully agree to amend it's [sic]
Complaint, with this Honorable Court's permission, to reflect all
Defendants are being sued: 'individually, acting under the color

---

[1]If the action was brought against Defendant Crosby "individually and in his
capacity as secretary of the Florida Department of Corrections," this ambiguity would
not exist.

of state law, and in their capacities as the agent and/or
representative of the Florida Department of Corrections.'

(Doc.13:12.)  In other words, Plaintiff clarifies that Defendant Crosby is being sued in
both his "individual" and "official" capacities.  The issue then becomes whether
Defendant Crosby qualifies as a "person" under § 1983 in his individual and official
capacities.

Both parties and this Court agree that a "person" under § 1983 includes a state
official sued in his individual capacity.  Indeed, the Supreme Court has held that "state
officials, sued in their individual capacities, are 'persons' within the meaning of § 1983."
Hafer v. Melo, 502 U.S. 21, 31, 112 S. Ct. 358, 363, 116 L. Ed. 2d 301, 313 (1991).
Thus, Defendant Crosby, sued in his individual capacity, qualifies as a "person" under §
1983.

However, while the parties agree that Defendant Crosby qualifies as a "person"
in his individual capacity under § 1983, the parties disagree on whether Defendant
Crosby qualifies as a "person" in his official capacity under § 1983.  That issue,
however, was conclusively resolved In Will v. Michigan Dep't of State Police, 491 U.S.
58, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).  In Will, the Supreme Court held that
"neither a State nor its officials acting in their official capacities are 'persons' under §
1983."  491 U.S. at 71, 109 S. Ct. at 2312, 105 L. Ed. 2d at 71.  The cases to which
Plaintiff cites offer no support for her position that an "official-capacity suit" may be
maintained against Defendant Crosby under § 1983.  The cases on which Plaintiff relies
involve suits against *local* governmental units and officials, not suits against the *state* or
its officials.   In Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 98 S. Ct.
2018, 56 L. Ed. 2d 611 (1978), a case relied on by Plaintiff, the Supreme Court held that
local governments and local officials sued in their official capacities are "persons" under
§ 1983.  Monell, 436 U.S. at 700-701, 98 S. Ct. at 2040-41, 56 L. Ed. 2d at 641.  The
other cases on which Plaintiff relies, Polk County v. Dodson, 454 U.S. 312, 102 S. Ct.
445, 70 L. Ed. 2d 509 (1981) (§ 1983 suit against a public defender employed by the
county) and Oklahoma City v. Tuttle, 471 U.S. 808, 105 S. Ct. 2427, 85 L. Ed. 2d 791
(1985) (§ 1983 suit against city police force and officer), likewise involve suits against
purely local governmental units and their officials.  Will, however, clearly distinguishes

official-capacity suits brought against local governmental units and their officials from

official-capacity suits brought against *state* governmental units and their officials:

> [I]t does not follow that if municipalities are persons then so are
> States.   States are protected by the Eleventh Amendment
> while municipalities are not, Monell, 436 U.S. at 690, n. 54, and
> we consequently limited our holding in Monell "to local
> government units which are not considered part of the State for
> Eleventh Amendment purposes," . . .

> Obviously, state officials literally are persons.   But a suit
> against a state official in his or her official capacity is not a suit
> against the official but rather is a suit against the official's
> office. Brandon v. Holt, 469 U.S. 464, 471 (1985).   As such, it
> is no different from a suit against the State itself.   See, e.g.,
> Kentucky v. Graham, 473 U.S. 159, 165-166 (1985); Monell,
> supra, at 690, n. 55.

Will, 491 U.S. at 71, 109 S. Ct. at 2312, 105 L. Ed. 2d at 58 (emphasis added).

Here, Defendant Crosby, as secretary of the Florida Department of Corrections,

is an official of the State of Florida.   Under Will, Plaintiff may not state a cause of action

under § 1983 against Defendant Crosby in his official capacity because Defendant

Crosby is not a "person" for purposes of § 1983.   Therefore, the claim asserted in Count

One against Defendant Crosby in his official capacity must be dismissed.

### 2.  Eleventh Amendment

Defendant Crosby also contends that Plaintiff's claim against him in his official

capacity under § 1983 is barred by the Eleventh Amendment.   The Eleventh

Amendment to the United States Constitution states that

> The Judicial power of the United States shall not be construed
> to extend to any suit in law or equity, commenced or
> prosecuted against one of the United States by Citizens of
> another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI.   "While the Amendment by its terms does not bar suits against a

State by its own citizens, [the Supreme Court] has consistently held that an

unconsenting State is immune from suits brought in federal courts by her own citizens."

Edelman v. Jordan, 415 U.S. 651, 662-63, 94 S. Ct. 1347, 1355, 39 L. Ed. 2d 662, 672

(1974) (citations omitted).   Further, "[t]he Eleventh Amendment bars a suit against state

officials when 'the state is the real, substantial party in interest.'" Pennhurst State Sch. &

Hosp. v. Halderman, 465 U.S. 89, 101, 104 S. Ct. 900, 908, 79 L. Ed. 2d 67, 78 (1984). A state is the real, substantial party in interest and is entitled to invoke its sovereign immunity when the action is, in essence, one for the recovery of money from the state even though an individual official is a nominal defendant.  Ford Motor Co. v. Dep't of Treasury, 323 U.S. 459, 464, 65 S. Ct. 347, 350, 89 L. Ed. 389, 394 (1945) (overruled in part on other grounds, Lapides v. Bd. of Regents, 535 U.S. 613, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002)).

Of course, the constitutional prohibition on a private party bringing suit against a state is not absolute.  Three exceptions exist.  First, a suit may proceed against a state if a state has waived its sovereign immunity and consented to suit in federal court. Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238, 105 S. Ct. 3142, 3145, 87 L. Ed. 2d 171, 177 (1985) (citing Clark v. Barnard, 108 U.S. 436, 447, 27 L. Ed. 780, 2 S. Ct. 878 (1883)).  Second, a suit may be brought against a state if Congress, pursuant to a valid exercise of its congressional power under § 5 of the Fourteenth Amendment, abrogates a state's immunity through a clear statement of its intent to abrogate. Fitzpatrick v. Bitzer, 427 U.S. 445, 456, 96 S. Ct. 2666, 2671, 49 L. Ed. 2d 614, 621 (1976).  Finally, a state or its officials may be sued for prospective, rather than for retrospective relief.  "[O]fficial-capacity actions for prospective relief [e.g., injunctive or declaratory relief] are not treated as actions against the State."  Will, 491 U.S. at 71, 109 S. Ct. at 2312, 105 L. Ed. 2d at 58 (quoting Graham, 473 U.S. at 167, n. 14; Ex parte Young, 209 U.S. 123, 159-60 (1908)).

Here, it has already been established that the claim asserted in Count One against Defendant Crosby in his official capacity is actually a claim levied against the State of Florida, the real, substantial party in interest.  Thus, the claim will be barred by the Eleventh Amendment unless an exception applies.  Here, none of the exceptions applies.  With respect to the first exception, Defendant Crosby is an official of the Florida Department of Corrections.  The Florida Department of Corrections is an agency of the State of Florida and is therefore covered by Florida's Eleventh Amendment immunity.  The Florida sovereign immunity statute, codified in Fla. Stat. § 768.28(17), states that

No provision of this section, or of any other section of the

> Florida Statutes, whether read separately or in conjunction with any other provision, shall be construed to waive the immunity of the state or any of its agencies from suit in federal court, as such immunity is guaranteed by the Eleventh Amendment to the Constitution of the United States, unless such waiver is explicitly and definitely stated to be a waiver of the immunity of the state and its agencies from suit in federal court. This subsection shall not be construed to mean that the state has at any time previously waived, by implication, its immunity, or that any of its agencies, from suit in federal court through any statute in existence prior to June 24, 1984.

Fla. Stat. § 768.28(17). In Schopler v. Bliss, 903 F.2d 1373 (11th Cir. 1990), the Eleventh Circuit, citing its own precedent as well as precedent from the Florida Supreme Court, stated that "section 768.28 does not waive Florida's Eleventh Amendment immunity." Id. at 1379 (citing Hamm v. Powell, 874 F.2d 766, 770 n. 3 (11th Cir. 1989); Gamble v. Fla. Dep't of Health and Rehabilitative Servs., 779 F.2d 1509, 1512 (11th Cir. 1986); Hill v. Dep't of Corrections, 513 So.2d 129, 133 (Fla. 1987)). With respect to the second exception, Congress did not intend to abrogate a state's Eleventh Amendment immunity under § 1983. Graham, 473 U.S. at 169, 105 S. Ct. at 3107, 87 L. Ed. 2d at 124 (citing Quern v. Jordan, 440 U.S. 332, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979); Edelman v. Jordan, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974)). Finally, Plaintiff does not contend that she is seeking prospective, rather than retrospective, relief. Count One requests damages, or retrospective relief, against Defendant Crosby. Therefore, Plaintiff's claim in Count One against Defendant Crosby in his official capacity under § 1983 is barred by the Eleventh Amendment.

Plaintiff's contention that Defendant Crosby's Eleventh Amendment argument is actually an improper assertion of a "qualified immunity defense" is without merit. The Eleventh Amendment's ban on private suits brought in federal court against a state is jurisdictional. See, e.g., Tennant v. Florida, 111 F. Supp. 2d 1326, 1330 (S.D. Fla. 2000) ("In general, [the Eleventh Amendment] . . . prohibit[s] federal courts from exercising subject matter jurisdiction over private party suits filed against a state or state officials."). Therefore, the official-capacity claim asserted against Defendant Crosby in Count One is barred ab initio.

### 3. Sufficiency of the Allegations

Defendants also contend that Count One against Defendant Crosby requires dismissal because a reasonable fact finder could not conclude from the allegations that the actions of Defendant Crosby were products of official policy or procedure resulting in deliberate indifference to Johnson's serious medical needs.  Specifically, Defendants contend that the Complaint fails to indicate precisely which acts, customs, practices, or policies practiced by Defendant Crosby violated Plaintiff's constitutional rights and which acts, customs, practices, or policies should have been practiced by Defendant Crosby. (Doc. 16:6.) Defendants assert that such ambiguities violate the "more stringent standard of pleading" required in civil rights actions.

Because this Court has already determined that the claim asserted against Defendant Crosby in his official capacity under § 1983 in Count One must be dismissed, it must now be determined whether Count One sufficiently states a claim against Defendant Crosby in his *individual* capacity under § 1983.  To answer that question, this Court must focus on the requirements for stating an individual-capacity claim under § 1983 and then determine whether the Complaint sufficiently states such a claim.

The Supreme Court has stated that

> Personal-capacity suits[, also referred to as 'individual-capacity suits,] seek to impose personal liability upon a government official for actions he takes under color of state law.

> On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.

Graham, 473 U.S. at 165-66, 105 S. Ct. at 3105-06, 87 L. Ed. 2d at 121-22 (citations omitted).  In other words, a claim upon which relief may be granted under § 1983 must establish the following: (1) the conduct complained of was committed by a person acting under color of state law; and (2) this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.  Parratt v. Taylor, 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420, 428 (1981) (overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-31, 106 S. Ct. 662, 664, 88 L. Ed. 2d 662, 668 (1986)); Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185, 193 (1978)).  These requirements are examined below.

**a. Under Color of State Law**

With respect to the first requirement, a person acts "under color of state law" when his behaviors constitute a "misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." United States v. Classic, 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368, 1383 (1941); Screws v. United States, 325 U.S. 91, 109, 65 S. Ct. 1031, 1039, 89 L. Ed. 1495, 1507 (1945); Williams v. United States, 341 U.S. 91, 99, 71 S. Ct. 576, 578, 95 L. Ed. 774, 778 (1951); accord, Monroe v. Pape, 365 U.S. 167, 187, 81 S. Ct. 473, 484, 5 L. Ed. 2d 492, 505 (1961) (adopting the definition of "under color of" law in the Classic, Screws, and Williams cases for § 1983 purposes) (overruled in part on other grounds, Monell, supra).  In Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982), the Supreme Court held that "conduct satisfying the state-action requirement of the Fourteenth Amendment satisfies the [§ 1983] statutory requirement of action under color of state law."  457 U.S. at 935, 102 S. Ct. at 2752, 73 L. Ed. 2d at 494; see also United States v. Price, 383 U.S. 787, 794, 86 S. Ct. 1152, 1157, 16 L. Ed. 2d 267, 272 (1966).  In other words, "[t]he ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the State?'" Rendell-Baker v. Kohn, 457 U.S. 830, 838, 102 S. Ct. 2764, 2770, 73 L. Ed. 2d 418, 426 (1982).  Conduct is "fairly attributable to the State" when it (1) involves "the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible" and (2) is caused by a state actor.  Lugar, 457 U.S. at 937, 102 S. Ct. at 2753-54, 73 L. Ed. 2d at 495.  A state actor is one who "is a state official, . . . has acted together with or has obtained significant aid from state officials, or . . . [whose] conduct is otherwise chargeable to the State."  Id.  In particular, a defendant in a § 1983 suit acts "under color of" state law when he acts in accordance with the authority granted to him by the State or when he misuses or abuses that authority.  Monroe, 365 U.S. at 172, 81 S. Ct. at 476, 5 L. Ed. 2d at 497.  This is true even when the defendant's actions are not "officially authorized or lawful."  Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S. Ct. 1598, 1605, 26 L. Ed. 2d 142, 150-51 (1970).

Here, Plaintiff alleges facts, which if true, satisfy the "under color of state law" requirement.  Defendant Crosby was a person acting under color of state law during the relevant time period because as secretary of the Florida Department of Corrections, he was an employee of the State of Florida, a state actor.  The Complaint alleges that Defendant Crosby, by virtue of his authority as secretary of the Florida Department of Corrections, employed or failed to promulgate policies and procedures which violated Plaintiff's constitutional rights.  Thus, Count One satisfies the "under color of state law" requirement.

### b. Deprivation of Rights, Privileges, or Immunities

With respect to the second requirement for stating a claim under § 1983, the Complaint must establish that the conduct complained of deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.  The constitutional violations asserted in Count One appear to impute liability to Defendant Crosby in his individual capacity based on his acts or omissions as secretary of the Florida Department of Corrections.  The law is clear, however, that a supervisor may not be held liable under § 1983 for the acts of his subordinates based on respondeat superior, vicarious, or supervisory theories of liability.  Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (citations omitted.)  Instead, a supervisor is liable for the acts of his subordinates under § 1983 either "when the supervisor personally participates in the alleged constitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation."  Id. (citations omitted.)  A causal connection may be established when: (1) "'a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so'"; (2) the supervisor's "'custom or policy . . . result[s] in deliberate indifference to constitutional rights'"; or (3) "facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."  Id. (citations omitted.)  "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous."  Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003) (citation omitted).

Against this legal background, this Court must also consider whether the factual

allegations in the Complaint satisfy the heightened pleading requirements imposed by the Eleventh Circuit in cases arising under § 1983 and involving individual government officials.  See GJR Invs. v. County of Escambia, 132 F.3d 1359, 1368 (11th Cir. 1998). A complaint is required to allege the relevant facts "with some specificity."  Gonzalez, 325 F.3d at 1235 (citing GJR Invs., 132 F.3d at 1367).  "[M]ore than mere conclusory notice pleading is required . . . . [A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory."  Id. (quoting Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984)).  In addition, the Eleventh Circuit has stated that "[w]e must also keep in mind the fact that '[w]e generally accord . . . official conduct a presumption of legitimacy.'"  Id. (citing United States Dep't of State v. Ray, 502 U.S. 164, 179, 112 S. Ct. 541, 550, 116 L. Ed. 2d 526 (1991)).

Applying these principles, this Court must conclude that Count One fails to allege facts sufficient to state a claim against Defendant Crosby in his individual capacity under § 1983.  The pertinent allegations against Defendant Crosby contained in Count One are as follows:

> 28.  This is an action for violation of Constitutional rights under 42 U.S.C. § 1983 against Defendants, Crosby and Sapp, for failing to enact or promulgate sufficient policies or procedures to insure against the deliberate indifference to Johnson's serious medical needs knowing that a failure to do so could result in serious medical consequences, including death, of inmates such as Johnson.

> 29.  Alternatively, Crosby and Sapp employed a custom of violating its [sic] own policies and procedures which resulted in deliberate indifference to Johnson's serious medical needs. Notwithstanding such knowledge, said Defendants were deliberately indifferent to Johnson's serious medical needs which ultimately resulted in Johnson's death.

> 30.  Johnson's death was a reasonably foreseeable result and consequence to the custom of ignoring existing policies and procedures and/or failing to enact sufficient policies and procedures by the Defendants, Crosby and Sapp resulted [sic] in the deliberate indifference to Johnson's serious medical needs and/or a deliberate indifference to Johnson's serious medical needs while confined at the Jackson Correctional Institution.

31.  Defendant, Crosby and Sapp, [sic] through the actions of the above-named Defendants, and as fully described above, caused Johnson to be subjected to the deprivation of rights, privileges and immunities secured by the Constitution and the laws of the United States, including

a. The right to substantive and procedural due process protected by the Fourteenth Amendment;

b. The right not to be subjected to cruel, unusual, and excessive punishment as guaranteed to prisoners by the Eighth Amendment;

c. The right to have serious medical and psychiatric needs addressed in a timely manner as guaranteed to prisoners by the Eighth Amendment.

(Doc. 1:7-8.)

These allegations do not establish supervisory liability under the Eleventh Circuit's heightened pleading requirements.  Paragraph 31, which attempts to impute liability to Defendant Crosby based on "the actions of the above-named Defendants," impermissibly bases Defendant Crosby's liability on theories of respondeat superior or vicarious liability.  In addition, the remaining allegations contained in Count One as well as the General Allegations which precede Count One do not allege that Defendant Crosby ever personally participated in the alleged constitutional misconduct against Johnson.  Thus, if the remaining allegations are to withstand dismissal, they must sufficiently allege a "causal connection between the actions of [Defendant Crosby] and the alleged constitutional deprivation."  Here, Plaintiff does not allege that "'a history of widespread abuse [has placed Defendant Crosby] on notice of the need to correct the alleged deprivation, and [that] he [has] fail[ed] to do so.'"  Specifically, the Complaint does not allege that inmates at JCI or in any Florida prison facility were regularly denied adequate medical care such that Defendant Crosby should have taken remedial steps to insure their adequate care.  In addition, the Complaint does not allege facts which "support 'an inference that [Defendant Crosby] directed [his] subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."  Indeed, the Complaint does not allege that Defendant Crosby ever

knew that Johnson was involved in an altercation with another inmate; knew that Johnson was struck in the head; knew that Johnson thereafter complained of symptoms possibly indicative of a traumatic head injury; knew that Johnson was even being treated by the medical staff at JCI; knew that Johnson was not seen by a physician; or knew that Johnson's life was at risk. The Complaint also does not allege that Defendant Crosby ever directed any of his subordinates to withhold medical treatment, including examination by a physician, from Johnson.

Instead, Count One attempts to hold Defendant Crosby liable solely on the basis that a "custom or policy," or lack thereof, "result[ed] in deliberate indifference to [Johnson's] constitutional rights." This allegation, however, is a sweeping legal conclusion that is unsupported by specific factual allegations. Plaintiff does not allege which specific customs or policies resulted in the alleged constitutional deprivations. Plaintiff also does not allege which policies or procedures should have been enacted to prevent the alleged constitutional deprivations. The Complaint merely alleges that despite the medical staff's apparent awareness and intent that Johnson should be examined by a physician, Johnson was not examined by a physician and died as a result of his injuries. In this way, the allegations are specific to this case. The allegations, at least as written, are not indicative of an overall *policy or custom* at the prison or within the Florida Department of Corrections of denying inmates access to a physician or to appropriate medical treatment.

In fact, the allegations undermine such a conclusion. The Complaint alleges that JCI employs a physician, Dr. Kats-Kagan, as its chief health officer. In addition, the Complaint alleges that Johnson was examined by Defendants on numerous occasions and that Defendants even documented their plans to have Johnson examined by a physician. That Johnson allegedly was not examined by a physician in this specific case or did not receive appropriate treatment do not justify the conclusion that it was a Florida Department of Corrections or JCI policy, procedure, custom, or lack thereof, which resulted in a deliberate indifference to Johnson's constitutional rights.

Moreover, given the presumption of legitimacy accorded to official conduct, it would be unreasonable to draw an inference, at least based on the facts as alleged, that the secretary of the Florida Department of Corrections enacted, ignored, or failed to

enact policies which resulted in deliberate indifference to Johnson's serious medical needs and a violation of his constitutional rights.  See Gonzalez, 325 F.3d at 1235 (discussing, in its ruling on a motion to dismiss, the "presumption of legitimacy" accorded to official conduct and the unreasonableness of inferring, without factual support, that supervisory officials engage in conduct that violates constitutional rights). Instead, the most favorable inference to Plaintiff that can be drawn from the facts as alleged is that policies and procedures exist at JCI and within all Florida prisons to insure that prisoners receive appropriate medical care; that Defendant Crosby expects the wardens and medical staffs at each prison to sufficiently address the serious medical needs of inmates as required by the Constitution; and that Defendant Crosby's subordinates nonetheless failed to adequately tend to Johnson's serious medical needs in this particular case.  Without specific factual allegations to undermine this presumption of legitimacy, it cannot fairly be said that the alleged acts or omissions of the staff at JCI reflected the official *policies* of the prison or of the Florida Department of Corrections at the time of the alleged constitutional deprivations.  The allegations against Defendant Crosby in Count One thus fail for vagueness and for lack of factual support under a heightened pleading requirement.  See id. ("conclusory" allegations in complaint that defendants personally "participated in, directed, and acquiesced in" alleged constitutional violations failed for vagueness under § 1983 claim for supervisory liability where complaint did not allege specific facts to support the allegations).

Count One against Defendant Crosby in his individual capacity under § 1983 must therefore be dismissed.  Unlike the claim asserted against Defendant Crosby in his official capacity, however, it is conceivable that Plaintiff may be able to properly state a claim against Defendant Crosby in his individual capacity under § 1983.  If so, Plaintiff should be given the opportunity to amend the Complaint.  Dismissal of Count One against Defendant Crosby in his individual capacity under § 1983 is therefore without prejudice.

### B.  Count Two - Defendant Crosby

Defendants also contend that the claim asserted in Count Two against Defendant Crosby warrants dismissal.  Count Two states a claim against Defendant Crosby under Florida's Wrongful Death Act, Fla. Stat. §§ 768.16-768.21.  First, Defendants contend

that

> Florida courts have predicated the wrongful death right of
> action upon whether the decedent maintained a right of action
> at his or her death.  <u>Toombs v. Alamo Rent-A-Car, Inc.</u>, 833
> So.2d 109 (Fla. 2002).  While the Wrongful Death Act creates
> independent claims for survivors, these claims are also
> derivative in the sense that they are dependent upon a wrong
> committed upon another person.  <u>Celotex Corp. v. Meehan</u>,
> 523 So.2d 141, 147 (Fla. 1988).
>
> In this case, Count II does not allege what right of action
> decedent maintained at the time of his death nor does it allege
> what wrong was committed upon decedent by Defendant
> Crosby.  The Complaint states only that 'as a direct and
> proximate result of the conduct of Defendants, decedent died
> on May 4, 2004.' (Complaint ¶ 35 and 39). Such vague and
> conclusory allegations that fail to state facts upon which to
> weigh the substantiality of the claim do not satisfy the
> requirements of Rule 8 of the Federal Rules of Civil Procedure
> . . .

(Doc. 16:7-8.)

This contention lacks merit.  Florida's Wrongful Death Act states, in relevant part,

that

> [w]hen the death of a person is caused by the wrongful act,
> negligence, default, or breach of contract or warranty of any
> person, . . . , and the event would have entitled the person
> injured to maintain an action and recover damages if death had
> not ensued, the person . . . that would have been liable in
> damages if death had not ensued shall be liable for damages
> as specified in this act notwithstanding the death of the person
> injured, although death was caused under circumstances
> constituting a felony.

Fla. Stat. § 768.19.

Defendants cite to two paragraphs of the Complaint (¶¶ 35 & 39) and
characterize them as "vague and conclusory allegations that fail to state facts upon
which to weigh the substantiality of the claim."  However, Defendants ignore paragraphs
1 through 26 of the Complaint which Count Two "re-alleges and incorporates by
reference."  The factual allegations contained in paragraphs 1 through 26 allege with
sufficient clarity and detail that the negligent and/or intentional acts and omissions of the

Defendants directly and proximately caused a violation of Plaintiff's constitutional rights and his ultimate death.  Unlike the heightened pleading requirements necessary to state a claim under § 1983, Defendants cite to no authority that Florida's Wrongful Death Act imposes a heightened pleading requirement.  Therefore, the Complaint need only satisfy the liberal notice pleading requirements under Rule 8 of the Federal Rules of Civil Procedure which require (1) a short and plain statement of the grounds upon which this Court's jurisdiction depends; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for judgment for the relief the pleader seeks.  Fed. R. Civ. P. 8.

Count Two satisfies the pleading requirements of Rule 8.  Specifically, a claim under the Wrongful Death Statute may be brought when death is caused by a "wrongful act" or "negligence."  Fla. Stat. § 768.19.  Here, the wrongful death claim asserted in Count Two appears to be predicated on both medical negligence and violations of Johnson's civil rights under § 1983.  Defendants admit that at least one of these theories of liability was apparent to them when they stated that "[i]n the present case, Plaintiff filed an action for wrongful death arising out of medical negligence."  (Doc. 16:8.)  Therefore, because Count Two has placed Defendant Crosby on notice of at least one viable theory of recovery under Fla. Stat. § 768.19 by Defendants' own admission, Defendants' contention that Count Two should be dismissed because it is "insufficiently vague" lacks merit.

However, while Count Two does not warrant dismissal on the basis of the sufficiency of the claim, dismissal of Count Two is warranted insofar as the wrongful death claim asserted in that count is predicated on a medical negligence theory of liability.  This is true because the claim for medical negligence that is asserted in Count Two fails to comply with Florida's statutory conditions precedent to bringing an action for wrongful death arising out of medical negligence.  Fla. Stat. § 766.104(1) states, in relevant part, that

> No action shall be filed for personal injury or wrongful death arising out of medical negligence, whether in tort or in contract, unless the attorney filing the action has made a reasonable investigation as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant.  The

> complaint or initial pleading shall contain a certificate of
> counsel that such reasonable investigation gave rise to a good
> faith belief that grounds exist for an action against each named
> defendant.

Fla. Stat. § 766.104(1).  Here, it appears that the wrongful death claim alleged in Count Two arises, at least in part, out of a medical negligence theory of liability.  The Complaint, however, does not contain a certificate of counsel indicating that a reasonable investigation was conducted and that such investigation gave rise to a good faith belief that grounds exist for an action against each named defendant.  Although Plaintiff indicates that she is "gladly willing" to "state and/or certify that she has followed the requirements of Florida Statute § 766.104(1)," the statute unambiguously requires the certificate to be included in "the complaint or initial pleading."  Therefore, insofar as the wrongful death claim asserted against Defendant Crosby in Count Two is predicated on a medical negligence theory of liability, the count must be dismissed without prejudice.  Plaintiff is granted leave to amend the Complaint to comply with the requirements of Fla. Stat. § 766.104(1).

## CONCLUSION

Defendant Crosby's Motion to Dismiss (Doc. 16) is **granted in part** and **denied in part** as follows:

1.   The claim asserted in Count One against Defendant Crosby in his official capacity under 42 U.S.C. § 1983 is **dismissed with prejudice**.

2.  The claim asserted in Count One against Defendant Crosby in his individual capacity under 42 U.S.C. § 1983 is **dismissed without prejudice**.

3.  The claim asserted in Count Two against Defendant Crosby that is based on a medical negligence theory of liability under Florida's Wrongful Death Act is **dismissed without prejudice** for failure to comply with Fla. Stat. § 766.104(1).

4.  Plaintiff is granted leave to amend the Complaint as to all claims that have

been dismissed without prejudice.

**ORDERED** on October 18, 2006.

**/s/ Richard Smoak**
**Richard Smoak**
**United States District Judge**