IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

HELEN JOHNSON, as personal representative
of the Estate of Robert T. Johnson,

        Plaintiff,

vs.                                    Case No. 5:06cv92-RS-MD

GALINA KATS-KAGAN, M.D.,
individually in her capacity as chief health officer
of Jackson Correctional Institution; and
GREGORY YOUNG POYTHRESS, ARNP,
individually in his capacity as advanced registered
nurse practitioner at Jackson Correctional
Institution,

        Defendants.
_____/

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before me is Defendants' Motion for Summary Judgment (Doc. 49).

## BACKGROUND

Plaintiff Helen Johnson sues Defendants, employees at Jackson Correctional Institute ("JCI"), in their individual capacities, for her son's death while incarcerated at JCI.  Plaintiff alleges that Defendants Galina Kats-Kagan, M.D., the chief health officer at JCI, and Gregory Young Poythress, an advanced registered nurse practitioner at JCI, were deliberately indifferent to Robert Johnson's serious medical needs and that Defendants' failure to provide Johnson necessary medical care proximately caused his death on May 4, 2004.  Suit is brought under the Eighth Amendment and 42 U.S.C. § 1983.

## FACTS

The Second Amended Complaint (Doc. 24) alleges that on February 22, 2004, Robert Johnson and another inmate were involved in an altercation.  The inmate struck Johnson, causing a laceration over Johnson's left eye.  The following morning, Johnson was sent to the prison infirmary where he received sutures.

Approximately two months after the altercation, or April 18, 2004, Johnson complained of headaches and dizziness.  He was evaluated by Carolyn Majors, a registered nurse at JCI.  Majors advised Johnson to remain in his dorm and rest.

Several hours later, M.E. Starkey, a licensed practitioner nurse at JCI, completed an abdominal pain assessment.  Starkey documented Johnson's complaints of nausea and vomiting.

The following day, April 19, 2004, Starkey completed another abdominal pain assessment and documented Johnson's complaints of dizziness, weakness, nausea, and a single episode of vomiting that followed her initial assessment on April 18.  Starkey placed Johnson in the infirmary for further observation.

Six hours later, Defendant Gregory Poythress, an advanced registered nurse practitioner at JCI, evaluated Johnson.  Poythress noted Johnson's complaints of abdominal pain, nausea, and vomiting five times following Starkey's initial assessment the night before.  Johnson apparently had presented similar symptoms "in the past." Poythress decided to modify Johnson's diet and release him from the infirmary.  At that time, Paula Bryson, a licensed nurse practitioner at JCI, gave Johnson 10 mg of Reglan for gastritis.

On April 27, 2004, Johnson again complained of headache, dizziness, nausea, and vertigo and stated that the medication which had been provided had not helped.  Poythress examined Johnson.  Poythress diagnosed Johnson with tension headache and vertigo.  Bryson gave Johnson ibuprofen and educated him on vertigo.

On April 29, 2004, prison personnel discovered Johnson awake but unresponsive in his bunk.  Johnson did not respond to painful stimuli.  He was transferred to Jackson Hospital.  A CT scan revealed an intracerebral hematoma.  Johnson was transported to South East Alabama Medical Center in Dothan, Alabama.

A nurse at South East Alabama Medical Center contacted JCI and spoke with Defendant Galina Kats-Kagan, M.D., chief health officer at JCI. Dr. Kats-Kagan informed the nurse that Johnson had been involved in an altercation with another inmate in February 2004. Dr. Kats-Kagan also informed the nurse that Johnson had complained of headaches on April 28, 2004, and that he had been transferred on that date to Marianna Hospital, evaluated, and returned to JCI. Allegedly, no documentation exists to substantiate that this transfer ever occurred. The nurse at South East Alabama Medical Center informed Dr. Kats-Kagan that Johnson had a left temporal bleed.

On April 29, 2004, Johnson underwent surgery to evacuate the bleed. On May 4, 2004, Johnson died at South East Alabama Medical Center as a result of the intracerebral hemorrhage.

The Second Amended Complaint asserts two counts against Kats-Kagan, Poythress, Majors, and Bryson. Count One alleges negligence in diagnosing and treating the subdural hematoma and cranial bleed which resulted in Johnson's death. Count Two alleges a violation of the Eighth Amendment's prohibition against cruel and unusual punishment pursuant to 42 U.S.C. § 1983.

Upon motion by Defendants, I dismissed the claim for simple negligence asserted in Count One of the Second Amended Complaint with prejudice on January 25, 2007 (Doc. 28.) I found that the claim, although labeled a claim for simple negligence, was actually a medical malpractice claim. I further found that Plaintiff had failed to comply with the presuit investigation requirements for medical malpractice claims under Fla. Stat. §§ 766.106(2) and 766.203(2) and that the claim was time-barred under the statute of limitations in Fla. Stat. § 95.11(4)(b).

I awarded attorneys' fees and taxable costs to Defendants and entered judgment against Plaintiff's counsel for his failure to conduct a "reasonable investigation" into whether a "good faith" belief existed that negligence had occurred under Fla. Stat. § 766.104. (Docs. 33 & 41.) I also noted that the wrongful death claims asserted in Counts Two and Three of the initial Complaint and Count One of the First Amended Complaint were actually claims for medical malpractice and that counsel had failed to

include the certificate of counsel required by Fla. Stat. § 766.104(1) in both the initial and First Amended Complaints. (Doc. 33.) I further found that Plaintiff's counsel had failed to conduct "even minimal investigation to form a good faith belief that Plaintiff's son died because of medical malpractice" and that as of the date of my order entered February 21, 2007, Plaintiff's counsel had not provided the required affidavit by a medical expert to corroborate Plaintiff's claim of medical malpractice. (Doc. 33.)

On June 22, 2007, the parties filed a stipulation dismissing with prejudice all claims against Defendants Majors and Bryson (Doc. 53). Pursuant to the stipulation, judgment was entered dismissing all claims against Defendants Majors and Bryson with prejudice.

The sole cause of action remaining is Plaintiff's Eighth Amendment claim against Defendants Kats-Kagan and Poythress. Plaintiff contends that Defendants Kats-Kagan and Poythress were deliberately indifferent to her son's medical needs and that such deliberate indifference proximately caused his death. Specifically, Plaintiff alleges that Defendants knew that Johnson had suffered an injury to his head approximately two months before his death; Defendants were aware that the symptoms presented by her son in the weeks prior to his death were indicative of a head injury; and despite numerous documented plans by Defendants to refer her son to a physician for evaluation beginning April 18, 2004, Johnson was not evaluated by a medical doctor until April 29, 2004.

Defendants request that summary judgment be entered in their favor on two grounds:

1. Plaintiff has failed as a matter of law to establish that the medical care and treatment provided to her son constituted reckless or deliberate indifference to a serious medical need, and

2. Plaintiff has failed as a matter of law to establish that Defendants' alleged indifference to her son's care proximately caused his death.

Plaintiff responded to the motion (Doc. 59).

## II.  ANALYSIS

**A. The Summary Judgment Standard**

Under Fed. R. of Civ. P. 56(c), summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e)).  A factual dispute is "'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law."  Anderson, 477 U.S. at 248; Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251, 106 S. Ct. at 2512.  The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993); Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).  Thus, "[i]f reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir.1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir.1985)).  However, "[a] mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice;

there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing Anderson, 477 U.S. at 251, 106 S. Ct. at 2511).

## B. Deliberate Indifference to Serious Medical Need

In my orders awarding Defendants attorneys' fees and taxable costs and directing that judgment be entered against Plaintiff's counsel under Fla. Stat. § 766.104, I found that Plaintiff's counsel had improperly attempted to circumvent the statute of limitations by mislabeling a medical malpractice claim as a claim for simple negligence and had failed to certify and obtain a verified written medical expert opinion establishing a good faith belief that medical malpractice had occurred, in contravention of Florida law. (Docs. 33 & 41.) I found that as of my order dated February 21, 2007, or more than *nine months* after the initial complaint was filed, Plaintiff's counsel had still not provided the corroborating affidavit by a medical expert. In my order, I could only conclude that Plaintiff's counsel had failed to demonstrate even "minimum competence in handling a medical malpractice claim."

Now, some five months later and *still* without a medical expert opinion to substantiate her claim, Plaintiff requests that I deny Defendants' motion for summary judgment on an Eighth Amendment claim which requires even *more* stringent proof than that required for a claim of simple negligence or medical malpractice. Plaintiff's request is denied.

The Eighth Amendment's prohibition against cruel and unusual punishment is violated when corrections employees, while acting under color of state law, are "deliberately indifferent" to the serious medical needs of a prisoner. Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986) (citing Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). However, "mere negligence or malpractice does not violate the Eighth Amendment"; rather, "[m]edical treatment that is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness violates the Eighth Amendment." Evans, 792 F.2d at 1058 (citing Estelle, 429 U.S. at 106, 97 S. Ct. at 292 and Gittlemacker v. Prasse, 428 F.2d 1,

6 (3rd Cir. 1970)).

Here, Plaintiff has failed to substantiate her claim that Defendants were deliberately indifferent to her son's medical needs.  Defendants submitted with their motion the affidavit of Christopher S. Rumana, M.D., a board-certified neurosurgeon and director of the brain injury program at a Tallahassee hospital.  Dr. Rumana stated that "in my opinion there is no evidence that any of the Defendants acted with deliberate indifference to any of Mr. Johnson's medical needs." (Rumana Aff., Exh. A, Doc. 51.) In fact, Dr. Rumana opined that "Defendants' medical care and treatment of Mr. Johnson was <u>at all times reasonable</u>." (Rumana Aff., Exh. A, Doc. 51) (emphasis added).

According to Dr. Rumana, Johnson suffered from several chronic diseases, including hepatitis C, alcoholism, drug abuse, liver failure, and thrombocytopenia, a disease resulting in decreased platelets in the blood "which would, in conjunction with his liver failure, place him at risk of significant bleeding problems." (Rumana Aff., Exh. A, Doc. 51.)  Dr. Rumana also stated that Johnson suffered from "significant pre-existing abdominal problems," including intestinal and stomach gas and possibly irritable bowel syndrome.  (Rumana Aff., Exh. A, Doc. 51.)

After the altercation in February 2004, Dr. Rumana stated that Johnson "never showed any sign of significant neurological problem."  Instead, Johnson complained of only "nonspecific symptoms" two months later, including "dizziness, headaches, abdominal pain, nausea, and vomiting."  In Dr. Rumana's opinion, it was reasonable to assume that these symptoms were caused by Johnson's hepatitis, intestinal gas, and abdominal problems.  Dr. Rumana stated that Johnson "was given supportive care for his presumed diagnosis." (Rumana Aff., Exh. A, Doc. 51.)

Dr. Rumana's medical opinion is uncontroverted.  Plaintiff failed to submit a contrary opinion from a medical professional.  Instead, Plaintiff relies solely on her own lay opinion to support her Eighth Amendment claim.  According to Plaintiff, the evidence establishes, or at least permits a jury to reasonably infer, that (1) her son presented a serious medical need so obvious that even a layperson would recognize the need for

prompt medical treatment, and (2) Defendants were deliberately indifferent to that need. Plaintiff's conclusions are without merit.

Even if I were to give Plaintiff the benefit of the doubt and assume for purposes of discussion only that her son's symptoms were so obvious that even a layperson would recognize the need for prompt medical treatment, the viability of Plaintiff's Eighth Amendment claim vanishes at that point. Plaintiff does not contend that Defendants ignored her son's need for medical care. This case is thus distinguishable from those prison cases where a complete lack of medical care raised an inference of deliberate indifference to an inmate's plight. See Evans, 792 F.2d at 1058 ("The facts . . . do not resemble those jail cases where a complete lack of medical care raised an inference of rampant deficiencies due to callous indifference to the prisoner's need for medical care"). See also Fielder v. Bosshard, 590 F.2d 105, 109 (5th Cir. 1979).

Plaintiff does not dispute that Defendants evaluated her son, treated him, and documented his symptoms over a period of several days. When Plaintiff's son was found unresponsive in his cell, Defendants transferred him to a hospital where he was evaluated and underwent emergency surgery. Plaintiff does not contend that Defendants delayed in evaluating or treating her son in the days before he lost consciousness. Plaintiff also does not allege that Defendants delayed in causing her son to be transported to the hospital after they found him unresponsive in his cell. Plaintiff's son passed away at the hospital, not in his cell, several days after he was admitted and extensively treated.

Plaintiff, in essence, questions the *adequacy* of the treatment provided her son by Defendants. Plaintiff's claim is thus indistinguishable from a claim for medical malpractice or negligence and does not rise to the level of a constitutional violation. To permit Plaintiff to present this case to a jury would be "to constitutionalize claims that sound in tort law." See Hamm v. Dekalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (federal courts are reluctant to second-guess medical judgments where an inmate has received medical attention and the dispute is over the adequacy of treatment), cert denied, 475 U.S. 1096, 106 S. Ct. 1492, 89 L. Ed. 2d 894 (1986). See also Waldrop v.

Evans, 871 F.2d 1030, 1035 (11th Cir. 1989); Anderson v. Nichols, 2007 U.S. Dist. LEXIS 49925, *8 (N.D. Fla. 2007). In order to justify presenting Plaintiff's Eighth Amendment claim to a jury, it was "incumbent upon Plaintiff . . . that [she] provide evidence from an expert that would remove Plaintiff's claim from the realm of a mere dispute over the adequacy of or appropriateness of treatment and would establish that Defendant[s] . . . [were] deliberately indifferent to [her son's] serious medical needs." Taylor v. Questcare, Inc., 1995 U.S. Dist. LEXIS 14975, *40 (S.D. Ala. 1995). Plaintiff has made no effort to support her allegations with a medical opinion.

Although a layperson might recognize the need for some medical treatment when Plaintiff's son presented symptoms, his medical needs were not so "obvious" that a layperson would "easily recognize" the need for treatment beyond that provided by the prison medical staff. Plaintiff died from a brain injury. Brain injuries are inherently not obvious nor are they easily recognizable. Many individuals complain of headaches, nausea, dizziness, and weakness without suffering from life-threatening brain injuries. As noted in Dr. Rumana's affidavit, this is particularly true when the complaining individual, here Plaintiff's son, suffers from numerous pre-existing ailments including Hepatitis C, alcoholism, drug abuse, liver failure, thrombocytopenia, and abdominal problems that might better explain his symptoms.

Plaintiff has also not established that the brain injury from which her son died was caused by the physical altercation involving her son and another inmate approximately *two months* prior to the onset of her son's symptoms. Indeed, it is undisputed that Plaintiff's son did not complain of any symptoms commonly associated with a head or brain injury during that intervening two-month period. Based on these undisputed facts and without an expert opinion stating otherwise, it is questionable whether a jury could even infer that Defendants were negligent in failing to recognize a brain injury; it is patently unreasonable to infer that Defendants were deliberately indifferent. See Evans, 792 F.2d at 1058 ("Whether medical misdiagnosis resulted from deliberate indifference or negligence is a factual question requiring exploration by expert witnesses.") (emphasis added).

Finally, Plaintiff fails to establish that Defendants' acts or omissions were the proximate or legal cause of her son's death. See Eleventh Cir. Pattern Jury Instr. 2.3.2 (2005). In fact, Plaintiff's response fails to even address the issue of proximate cause. Specifically, Plaintiff has not shown that the care or lack of care provided by Defendants *caused* her son's death. Plaintiff has also not demonstrated that different treatment by Defendants or earlier evaluation of her son by a medical doctor would have saved her son's life. For these reasons, Defendants are entitled to summary judgment in their favor.

## CONCLUSION

1. Defendants' Motion for Summary Judgment (Doc. 49) is **granted**.

2. Plaintiff's Eighth Amendment claim brought pursuant to 42 U.S.C. § 1983 and alleging that Defendants Kats-Kagan and Poythress were deliberately indifferent to her son's serious medical needs is **dismissed with prejudice**.

3. All pending motions (Docs. 63, 65 & 66) are **denied as moot**.

4. Plaintiff's counsel shall immediately provide Plaintiff with a copy of this order and file a notice upon compliance.

5. The clerk is directed to enter judgment in favor of Defendants.

6. The clerk is directed to close the file.

**ORDERED** on July 25, 2007.

/s/ Richard Smoak
**Richard Smoak**
**United States District Judge**